# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHNNY SWANK** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-3122** |
| **ROBERT C. TANNER, WARDEN, ET AL.** | **SECTION "R"(3)** |

## REPORT AND RECOMMENDATION

Plaintiff, Johnny Swank, a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center, filed this civil action pursuant to 42 U.S.C. § 1983. In the original complaint, he named Warden Robert C. Tanner and inmate Leroy Perkins as defendants.[1] He later amended the complaint to add inmate Andrew David Wetzel as a defendant.[2] He thereafter again amended the complaint to add Bryan Williams, a prison guard, as an additional defendant.[3]

On January 26, 2012, the Court held a Spears hearing. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

---

[1] Rec. Doc. 1.

[2] Rec. Docs. 9 and 10.

[3] Rec. Doc. 13.

Based on the allegations of the complaint, as amended, and plaintiff's testimony at the Spears hearing, the Court finds that plaintiff is making the following allegations in this civil action.

In the original complaint, plaintiff alleged that he was moved from administrative segregation into a cell with inmate Leroy Perkins in October of 2011. Perkins allegedly then pressured plaintiff into engaging in a sexual relationship. Approximately one week later, plaintiff was then moved to another cell on the same unit. Plaintiff contended that Perkins was friendly with the prison guards and instigated these moves. Plaintiff further alleged that he later heard from another inmate that Perkins wanted plaintiff moved to a different unit within the prison. Plaintiff stated that he was afraid that "Leroy will get mad and have one of his friends (guards) shake me down, messing with my head, with write-ups, shake downs." Plaintiff explained that he refused to go into protective custody because Perkins would still be able to get messages to the guards and because plaintiff felt that he should not be punished because Perkins was the perpetrator.

In his first two amended complaints, plaintiff added inmate Andrew David Wetzel as an additional defendant. Plaintiff alleged that he believed that Wetzel conspired with Perkins in the "rape" of plaintiff.

In his third amended complaint, plaintiff added prison guard Bryan Williams as a defendant. Plaintiff claimed that he had been verbally threatened by Williams. Plaintiff also alleged that his name and character had been "systematically destroyed" by Williams. Lastly, it is claimed that, in retaliation for the filing of administrative grievances and this lawsuit against Perkins, Williams subjected plaintiff to harassing searches and confiscated his property as contraband. Plaintiff alleged that he suffered emotional harm as a result of Williams' actions.

At the Spears hearing, plaintiff testified that he named Warden Tanner as a defendant in this lawsuit simply because he was "the authority over the institution." He stated that Tanner had no personal involvement in the events giving rise to this civil action.

Plaintiff also testified that he believed that Bryan Williams conspired with Perkins and Wetzel in the plan to have Perkins "rape" plaintiff. Williams was the person who told plaintiff that he was being transferred from administrative segregation into the cell occupied by Perkins. Plaintiff stated that Perkins worked on a cleaning crew supervised by Williams. Plaintiff opined that he felt that Williams knew Perkins was going to be "raped."

Plaintiff explained that he has not complained to prison officials about Williams because he is afraid to do so. Plaintiff also testified that he refuses to go into protective custody because he feels unsafe there. He stated that he prefers to be in his current unit.

## I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint and his Spears hearing testimony,[4] the undersigned recommends that his federal civil rights claims be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## II. Plaintiff's Claims

### A. Warden Robert C. Tanner

It is clear that "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). However, as noted, plaintiff expressly testified at the Spears hearing that Warden Tanner had no such personal involvement in the events giving rise to this civil action. Rather, plaintiff stated that Tanner was being sued based solely on the fact that he runs the prison. That fact alone simply is not sufficient to serve as a basis for liability in a federal civil rights action, because, "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008).

---

[4] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

In light of the foregoing, plaintiff has identified no valid basis on which Warden Tanner can be held liable in this action, and the claims against him must therefore be dismissed.

### B. Bryan Williams

Plaintiff asserts several claims against guard Bryan Williams. However, for the following reasons, those claims must likewise be dismissed.

#### 1. Verbal Threats and Abuse

As noted, plaintiff claims that he has been threatened by Williams. However, verbal threats and verbal abuse, although undeniably troubling, simply do not give rise to a claim cognizable pursuant to 42 U.S.C. § 1983. See Westbrook v. Treon, 78 Fed. App'x 970, 972 (5th Cir. 2003) ("Verbal threats do not rise to the level of a constitutional violation."); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002) ("[C]laims of verbal abuse are not actionable under § 1983 ...."); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983."); George v. Travis, Civil Action No. 07-986, 2007 WL 1428744, at *6 (E.D. La. May 10, 2007); Vessell v. Gusman, Civil Action No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. Jul. 19, 2006).

#### 2. Defamation

Plaintiff also claims that his "name and character" have been "systematically destroyed" by Williams. Out of an abundance of caution, the Court will assume that plaintiff is therefore attempting to assert a defamation claim.

Regarding such claims, the United States Fifth Circuit Court of Appeals has noted: "Following Paul v. Davis, 424 U.S. 693, 710-11, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976), we have consistently required plaintiffs alleging that the defamatory statements of a government official operated to deprive them of a protected liberty interest to satisfy what has sometimes been referred to as the 'stigma plus infringement' test." Vander Zee v. Reno, 73 F.3d 1365, 1369 (5th Cir. 1996).

"To meet the stigma prong, a plaintiff must show that the stigma was caused by concrete, false factual assertions by a state actor." Texas v. Thompson, 70 F.3d 390, 392 (5th Cir. 1995). Therefore, an allegation of falsity is a "prerequisite" to such a claim. Blackburn v. City of Marshall, 42 F.3d 925, 936 (5th Cir. 1995). Although plaintiff has not even identified the allegedly defamatory statements at issue, the Court assumes that he is alleging that the statements, whatever they were, were in fact false. However, even if so, his defamation claim still fails on the infringement prong of the test.

With respect to that infringement prong, injury to a person's reputation alone simply is not a constitutionally cognizable injury. Vander Zee, 73 F.3d at 1369. Rather, "a plaintiff must show that the state sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or one of the incorporated provisions of the Bill of Rights." Thompson, 70 F.3d at 392. Plaintiff has not alleged that he has suffered such an infringement in this case, much less given any indication whatsoever how statements by Williams in a penal setting could rise to the level of infringement the law requires.

### 3. Retaliatory Harassment

Plaintiff also claims that he has been be subjected to retaliatory harassment in the form of unwarranted searches and confiscation of his property. The United States Fifth Circuit Court of Appeals has noted that such retaliation claims must be "regarded with skepticism." See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quotation marks omitted). Further, the Fifth Circuit has held:

> To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Causation requires a showing that but for the retaliatory motive the complained of incident would not have occurred.

McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) (internal quotation marks and ellipsis omitted).

Regarding the first prong of that inquiry, plaintiff alleges that the retaliation here was based on the fact that he submitted administrative complaints and filed the instant lawsuit. Prisoners clearly have a First Amendment right to submit such grievances and to file nonfrivolous lawsuits. See, e.g., Richard v. Martin, 390 Fed. App'x 323, 325-26 (5th Cir. 2010) (acknowledging that there is a First Amendment right to file a prison grievance); Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (noting that the First Amendment right of access to the courts encompasses a right of prisoners to file nonfrivolous legal claims challenging their convictions or conditions of confinement); Woods, 60 F.3d at 1164 ("The law of this circuit is clearly established ... that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."); Jackson v. Cain, 864 F.2d 1235,

1248 (5th Cir. 1989) (noting that the First Amendment's right of freedom of expression encompasses a right to file a prison grievance).

However, even if plaintiff's retaliation claim properly invokes a recognized constitutional right, it still fails because he cannot establish that Williams' actions stemmed from a retaliatory motive. To support a retaliation claim, a prisoner must be able to either produce direct evidence of retaliatory motivation or show a chronology of events from which retaliation may plausibly be inferred. Woods, 60 F.3d at 1166. In the instant case, plaintiff has no direct evidence of Williams' motivations. Further, he is unable to show that an inherently suspect chronology of events exists to support his retaliation claim.

Although plaintiff filed administrative grievances and this lawsuit against Perkins, it cannot fairly be inferred that Williams' actions were related to those filings. It is hardly an uncommon occurrence for prisoners to file administrative grievances, and there is no basis for concluding that plaintiff's complaints, which involved relatively trifling matters such meals being served late and cold, so enraged Williams that it caused him to embark of a campaign to harass plaintiff. There likewise is no reason to believe that Williams' actions resulted from plaintiff's decision to file this lawsuit, in that Williams was not even originally a party to the lawsuit and his purportedly retaliatory actions took place before the complaint was amended to include him as a defendant.

Instead, plaintiff's allegations of a retaliatory motive are wholly speculative and conclusory. Because prisoners must allege an adequate factual basis for a retaliation claim, conclusory allegations of retaliatory motive, such as the one advanced by plaintiff, are insufficient. See Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing as frivolous conclusory allegations that a

prison official's action was taken in retaliation for the prisoner's prior complaints); see also Moore v. Thaler, 436 Fed. App'x 311, 312 (5th Cir. 2011) (holding that a prisoner's "conclusional allegations, based solely on his personal beliefs, were not sufficient to support a valid constitutional claim for ... retaliation"); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056 (E.D. La. Aug. 25, 2009) ("A prisoner cannot convert a unfounded challenge to a facially reasonable prison search into an actionable constitutional claim simply by adding a barebones allegation that the guard had a retaliatory motive.").

Out of an abundance of caution, the Court further notes that, in the absence of a viable retaliation claim, the underlying actions about which plaintiff complains are not otherwise actionable.

As to the searches, the law is clear: inmates have *no* reasonable expectation of privacy in their cells, and random searches without *any* reasonable suspicion of wrongdoing are not only constitutionally permissible but are in fact "essential to the effective security of penal institutions." Hudson v. Palmer, 468 U.S. 517, 525-30 (1984).

As to the confiscation of his property as contraband, "prisoners have no constitutional right to possess contraband." Lockamy v. Dunbar, Civ. Action No. 5:08cv150, 2010 WL 412816, at *4 (E.D. Tex. Jan,. 28, 2010), aff'd, 399 Fed. App'x 953 (5th Cir. 2010). Moreover, even if the property confiscated was not in fact contraband, deprivations of property simply are not cognizable in federal court. In Hudson, the United States Supreme Court also held that where a state actor, through his random and unauthorized actions, intentionally deprives a prisoner of his property, there is no due process violation *if* the state provides an adequate postdeprivation remedy. Id. at 533.

Louisiana law clearly provides plaintiff with an adequate postdeprivation remedy for property loss, i.e. a tort suit brought in state court. Bennett v. Louisiana Department of Public Safety and Corrections, No. 02-30593, 2003 WL 1109690 (5th Cir. Feb. 19, 2003); Arnold v. Inmate Accounts, No. 02-30219, 2002 WL 31017153 (5th Cir. Aug. 20, 2002); Hodge v. B.B. Sixty Rayburn Correctional Center, Civ. Action No. 08-3193, 2008 WL 4628586, at *7 (E.D. La. Oct. 16, 2008); Parker v. Strain, Civ. Action No. 06-9459, 2007 WL 38281, at *2 (E.D. La. Jan. 3, 2007). Accordingly, plaintiff may not pursue a property claim in this federal forum.

### 4. Conspiracy to Commit Rape

Lastly, at the Spears hearing, plaintiff stated that he believed that Williams conspired with Perkins to have plaintiff moved into Perkins' cell so that the alleged "rape" could take place. It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). That said, the United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted). Moreover, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998).

However, plaintiff has no evidence whatsoever to support his subjective belief that Williams knew Perkins intended to "rape" plaintiff. At the Spears hearing, plaintiff acknowledged that, according to prison officials, Perkins has no history of committing such sexual assaults. Plaintiff's speculation regarding a retaliatory motive are based simply on the facts that Perkins worked on Williams' cleaning crew and that the two are friends. Those facts, even if true, are insufficient to support plaintiff's wholly conclusory allegation that Williams knowingly placed plaintiff in danger.

Accordingly, for all of the foregoing reasons, the claims against Williams should be dismissed.

### C. Leroy Perkins and Andrew David Wetzel

Lastly, as noted, plaintiff claims that inmates Leroy Perkins and Andrew David Wetzel conspired to "rape" plaintiff. However, plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. "Numerous cases have held that an inmate is not a state actor or a person acting under the color of state law for purposes of stating a claim under § 1983." Goodell v. Anthony, 157 F. Supp. 2d 796, 801 (E.D. Mich. 2001); see also Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *3 (E.D. La. Oct. 23, 2009); Butler v. Jenkins, 450 F. Supp. 574, 575 (E.D. Tenn. 1978).

Plaintiff apparently attempts to save the claims against Perkins and Wetzel by alleging that they conspired with guard Bryan Williams concerning the "rape." It is true that a private individual can be held liable under § 1983 for engaging in a conspiracy with state actors. See Mills v. Criminal District Court # 3, 837 F.2d 677, 679 (5th Cir. 1988); see also Mowbray v. Cameron County, Texas, 274 F.3d 269, 278 (5th Cir. 2001) ("[I]t is possible, in limited circumstances, to allege a § 1983 conspiracy claim against a private actor...."). However, as noted previously, plaintiff's contention that Williams was involved is purely conclusory, and, therefore, it is clearly insufficient to serve as a basis for suing Perkins and Wetzel in a federal civil rights action. Priester v. Lowndes County, 354 F.3d 414, 423 n.9 (5th Cir. 2004) ("The allegation of a conspiracy between private and state actors requires more than conclusory statements."); Lafleur v. City of Westwego, Civ. Action No. 10-363, 2011 WL 802612, at *4 (E.D. La. Feb. 28, 2011).

For these reasons, there is no basis for holding Perkins or Wetzel liable under federal law. Moreover, while plaintiff may have a claim against those individuals under state law, he has not expressly asserted any such state law claims. Further, even if plaintiff intended to assert such claims under state law, this Court should decline to hear them. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial,

13

the general rule is to dismiss any pendent claims."). If plainrtiff wishes to pursue such state law claims, he should do so in state court.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's federal civil rights claims be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

It is **FURTHER RECOMMENDED** that plaintiff's state law claims, if any, be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[5]

New Orleans, Louisiana, this twenty-ninth day of March, 2012.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.